**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

HUIMIN LIANG, YU JUN PENG, YUAN
SANG, JIA LEI WANG, YAN LING XU, YUN
ZHENG, and WENDY ZHONG, on behalf of
themselves and others similarly situated,

                Plaintiffs,

        v.

BIOREFERENCE LABORATORIES, INC.,

                Defendant.

Docket No.

Plaintiffs Huimin Liang, Yu Jun Peng, Yuan Sang, Jia Lei Wang, Yan Ling Xu, Yun

Zheng, and Wendy Zhong, on behalf of themselves and others similarly situated by their

attorneys, The Legal Aid Society and Fisher Taubenfeld LLP, state the following:

## INTRODUCTION

1.     Plaintiffs are all highly-trained medical professionals, with years of experience

working either as nurses or doctors in their native countries of China or Taiwan.

2.     Faced with language and licensing barriers after immigrating to the United States,

Plaintiffs began working as phlebotomists, eventually becoming employees of Defendant

BioReference Laboratories, Inc. ("BioReference"), which describes itself as "the largest full-

service specialty laboratory in the United States."

3.     Plaintiffs were stationed to work at BioReference patient service centers located

in Manhattan's Chinatown, Sunset Park, Brooklyn, and Flushing, Queens under the direction of

Dr. Anthony Hu.  There, they were forced to perform non-phlebotomy duties that were expressly

prohibited by BioReference and were not required of non-Chinese employees. These additional

job duties forced Plaintiffs to work overtime hours for which they were denied appropriate overtime pay.

4.     Plaintiffs were also paid less than non-Chinese phlebotomists at other BioReference locations and subject to restrictive sick leave policies that were not applied to non-Chinese employees.

5.     Plaintiffs were also provided with unsafe and inadequate personal protective equipment ("PPE") during the COVID-19 pandemic, including used, heavily-soiled and even bloodied disposable gloves.

6.     In May 2020, when participating in mass COVID-antibody testing efforts at Grand Central Station, Plaintiffs Yu Jun Peng, Yuan Sang and Yun Zheng were also subjected to a hostile work environment because of their Chinese ethnicity and/or national origin.

7.     Plaintiffs bring this suit under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") seeking compensatory, liquidated and punitive damages, unpaid overtime wages, pre-judgment and post-judgment interest and attorneys' fees and costs.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5, 42 U.S.C. § 1981 and 29 U.S.C. § 201 *et seq.*

9.     Plaintiffs are residents and citizens of the State of New York.

10.     Defendant is a business corporation located and operating in the State of New Jersey.

11.     The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

12.     This Court also has diversity jurisdiction over Plaintiffs' claims because the amount in controversy exceeds $75,000 and is between citizens of different States.

13.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

15.     Plaintiffs, other than Plaintiff Jia Lei Wang (Plaintiff Wang), have exhausted all administrative remedies in a timely manner to bring claims under Title VII.  Plaintiffs received Right to Sue letters on October 4, 2021.

## PARTIES

**The Plaintiffs**

16.     Plaintiff HUIMING LIANG is a resident of Staten Island, New York. She is a phlebotomist employed by BioReference. Ms. Liang was born in China and is ethnically Chinese. Ms. Liang was hired by BioReference as a phlebotomist on September 11, 2017 and remains employed by BioReference in the same position. Before joining BioReference, she worked as a nurse in China, where she was trained in phlebotomy and regularly drew blood as part of her duties.

17.     Plaintiff YU JUN PENG is a resident of Queens, New York. She was born in Taiwan and is ethnically Chinese. Ms. Peng was employed by BioReference as a phlebotomist from October 1, 2019 until March 2021.

18.    Plaintiff YUAN SANG is a resident of Queens, New York. She was born in China and is ethnically Chinese. Ms. Sang was hired by BioReference as a phlebotomist in or around March 2013 and remains employed at BioReference in the same position. Prior to joining BioReference, Ms. Sang worked for several years as a nurse in China where she was trained in phlebotomy.

19.    Plaintiff JIA LEI (Angela) WANG is a resident of Nassau County, New York. She was born in China and is ethnically Chinese. Before joining BioReference, Ms. Wang received a bachelor's degree in medicine in China, and received a certificate of phlebotomy in New York. Ms. Wang is currently employed by BioReference as a phlebotomist and commenced employment on or about July 6, 2016.

20.    Plaintiff YAN LING XU is a resident of Brooklyn, New York. She was born in China and is ethnically Chinese. Ms. Xu was employed by BioReference as a phlebotomist from approximately July 2009 until November 29, 2020. Before joining BioReference, Ms. Xu worked as a nurse in China, where she was trained in phlebotomy and routinely drew blood as part of her duties and received training and certification to work as a medical assistant in the United States.

21.    Plaintiff YUN ZHENG is a resident of Queens, New York. She was born in China and is ethnically Chinese. Ms. Zheng was hired by BioReference as a phlebotomist on March 25, 2019 and remains employed at BioReference in the same position. Prior to joining BioReference, Ms. Zheng worked as a medical doctor in China and received a phlebotomy certification in or around January 2019.

22.    Plaintiff WENDY ZHONG is a resident of Queens, New York. She was born in China and is ethnically Chinese. Ms. Zhong was hired by BioReference as a phlebotomist on

4

November 27, 1995 and remains currently employed at BioReference in the same position. Prior to joining BioReference, Ms. Zhong worked as a nurse aid and received her nurse aide certification in or around 1994.

**The Defendant**

23.     Defendant BIOREFERENCE is a corporation headquartered and incorporated in New Jersey. BioReference provides testing and diagnostic services to medical providers, patients, hospitals and businesses, including phlebotomy services and services related to the COVID-19 pandemic. It operates patient service centers throughout the New York metropolitan area, including several patient service centers in Manhattan's Chinatown, Sunset Park, Brooklyn and Flushing, Queens. BioReference employs or has employed all of the Plaintiffs.

24.     At all times herein stated, Defendant is and has been an enterprise within the meaning of 29 U.S.C. § 203(r).

25.     At all times stated herein, Defendant has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), in that it has and has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce by any person, and in that it has and has had an annual gross volume of sales made or business done of not less than $500,000.

26.     Plaintiffs handled tools and materials, such as needles, that traveled through interstate commerce.

27.     At all times relevant to this action, Defendant is or was Plaintiffs' employer within the meaning of 29 U.S.C. §§ 203(d) and 203(g), NYLL §§ 2(6), 191(3) and 651(6).

## STATEMENT OF FACTS

**Chinatown, Sunset Park and Flushing Patient Service Centers**

28.　　Defendant BioReference operates patient service centers throughout New York City, including four patient centers in Flushing, Queens, three patient centers in Manhattan's Chinatown, and two patient service centers in Sunset Park, Brooklyn.

29.　　These patient service centers are all under the direction and management of Dr. Anthony Hu.

30.　　Each of the Plaintiffs was hired by Dr. Hu, who set their working conditions, including their job responsibilities and rates of pay.

31.　　Upon information and belief, Dr. Hu is also responsible for developing relationships with physicians' offices so that these offices will either refer their clients to BioReference patient service centers for sample collection or use BioReference's laboratory to analyze samples collected by their offices.

32.　　Throughout their employment with BioReference, Plaintiffs Yu Jun Peng, Yuan Sang, Angela Wang and Yun Zheng worked exclusively at the Flushing patient service centers and were directly supervised by Xiao Ping ("Cathy") Pan.

33.　　 Throughout their employment with BioReference, Plaintiffs Huimin Liang and Yan Ling Xu worked exclusively at the Chinatown and Sunset Park patient service centers and were directly supervised by Cathy Pan and Xiao Hong Tan.

34.　　When she was first hired by BioReference, Plaintiff Wendy Zhong worked at the Chinatown patient service centers. In or around 2001, Ms. Zhong began working in the Flushing patient service centers, where she continues to be stationed.

**Prohibited Duties**

35.    Annually, Defendant required Plaintiffs to attend trainings and/or attest to receiving training on BioReference's Corporate Integrity Program, which expressly prohibited phlebotomists from providing free services in return for physician referrals and from performing clerical or medical services that are normally the responsibility of the physician office staff.

36.    Defendant also required Plaintiffs to attend trainings and/or attest to receiving training on the Health Insurance Portability and Accountability Act ("HIPAA").

37.    BioReference also provided Plaintiffs with written information delineating the duties that were and were not permitted of phlebotomists. Duties that were expressly prohibited included: performance of any general duties for any physician or medical office that was not related to specimen collection, packaging and processing; completion of test requisitions without written instructions from the physician or medical office; providing any patient billing information; providing or "sharing" gloves, needles, gauze, alcohol pads or any other supplies; and offering or providing anything of value to physicians or their staff to include physicians to order, purchase, use, refer, recommend or arrange for the order, purchase, use referral or recommendation of BioReference's services.

38.    Nevertheless, Plaintiffs were all required to perform work that was explicitly prohibited by BioReference's own policies.

39.    Plaintiffs were also required to complete duties that gave them access to confidential patient health information in violation of HIPAA.

40.    Upon information and belief, Dr. Hu provides incentives to physician offices to attract and maintain their business. These incentives included prohibited duties that he required various Plaintiffs to do, including: ordering and delivering supplies such as gloves, needles,

printer paper and toner for medical offices; physically escorting patients from physician and medical offices to patient service centers; correcting and/or completing requisition forms sent back from BioReference's main laboratory by calling physician's offices and BioReference's technical services department; printing, checking and correcting laboratory reports containing protected patient health information; delivering laboratory reports to physician's offices; correcting patient insurance information on documents; correcting diagnosis error forms; filling in ICD-10 codes on "white papers"; processing samples (sometimes ranging in the hundreds) collected from physician offices for laboratory analysis; and collecting and delivering faxes sent to patient service centers intended for physician offices.

41.    Defendant also required Plaintiffs to gather specimens collected from physician offices and deliver them to BioReference's main laboratory in New Jersey.

42.    Phlebotomists stationed in the Chinatown, Sunset Park and Flushing patient service centers who were not ethnically Chinese were not required to perform any of these extensive prohibited duties. Instead, non-ethnically Chinese phlebotomists were mainly required to draw blood.

43.    When performing these duties for physician offices, staff at the physician offices would berate or insult Plaintiffs for being slow or incompetent, causing Plaintiffs great humiliation.

44.    On one occasion, Plaintiff Wendy Zhong was given a formal reprimand by Dr. Hu when an office manager from a physician's office angrily complained to him that she did not answer a question regarding aspiration cytology, a field outside of Plaintiff's knowledge and job responsibilities.

45.     In addition to the prohibited duties that Plaintiffs performed for physician's offices, Defendant required Plaintiffs to receive and handle heavy shipments of supplies; fix the printer and computers when there were problems; stock inventory; collect payment from self-pay patients; perform bookkeeping, including accounting for each day's cash flow, calculating the number of patients that had been served each day and making deposits at the bank.

46.     Plaintiffs were also required to perform cleaning and janitorial duties, such as emptying garbage cans, taking out the trash and cleaning bathrooms.

47.     Defendant did not require phlebotomists stationed in the Chinatown, Sunset Park and Flushing patient service centers who were not ethnically Chinese to perform these additional tasks.

48.     In 2018, one Chinese phlebotomist stationed in the Chinatown patient service centers was denied sick leave even after she became severely ill with the flu because she had not provided advanced notice. Her symptoms quickly progressed beyond recovery, and she died shortly afterwards.

49.     Plaintiffs were all informed of this co-worker's death by their supervisor, Cathy Pan. Plaintiffs understood this as a warning that even their lives were not valued by BioReference.

50.     In contrast, Defendant did not require phlebotomists who were not ethnically Chinese to provide any advanced notice to take paid time off or sick leave.

**Discrimination in Wages**

51.     In or around the beginning of 2019, Plaintiffs Huimin Liang and Yan Ling Xu, along with other ethnically Chinese colleagues stationed at the Chinatown patient service centers, learned that a colleague with fewer years of experience and less seniority within the

company who was not ethnically Chinese was being paid at a much higher hourly rate than the ethnically Chinese phlebotomists.

52.    Ms. Liang, Ms. Xu and their ethnically Chinese colleagues confronted Xiao Hong Tang about the apparent pay differential. Ms. Tang agreed to address the matter with Dr. Hu.

53.    Dr. Hu explained to Ms. Liang, Ms. Xu and their colleagues that pay was set by Defendant's corporate office and beyond his control.

54.    In or around March 2019, Ms. Liang, Ms. Xu and their ethnically Chinese colleagues presented a letter to Dr. Hu addressed to Defendant's corporate office requesting Defendant to rectify the disparate pay.

55.    In response, in April 2019, Plaintiffs Liang, Sang, Xu, Wang and Zhong and their ethnically Chinese colleagues received minor pay increases. However, upon information and belief, even after the pay increase, these Plaintiffs were still paid less than non-Chinese phlebotomists employed by Defendant.

56.    On or around January 16, 2021, only after Plaintiff Yuan Sang filed charges with the EEOC, a representative from Defendant's human resources department informed Plaintiffs Liang, Peng, Sang, Zheng and Zhong that their hourly pay rates would be increased and that the pay increase would be applied retroactively to December 26, 2020.

57.    Upon information and belief, until Plaintiffs' retroactively applied pay increases in January 2021, Plaintiffs were paid less than non-Chinese phlebotomists employed by BioReference with commensurate years of experience and seniority in the company.

**Grossly Inadequate PPE During the COVID-19 Pandemic**

58.     From approximately March 2020 until approximately December 2020, Plaintiffs were provided with PPE that was grossly inadequate to protect them against the risks inherent to their job duties during the COVID-19 pandemic.

59.     Each day, Plaintiffs were provided two non-medical-grade face masks and one thin gown. Plaintiffs were not permitted to replace their masks or gowns even if they became damaged or soiled throughout the day.

60.     Plaintiffs who were working in the Chinatown, Flushing, and Sunset Park locations were also provided with disposable gloves that had already been used and were, on occasion, even bloodstained.

61.     The grossly inadequate PPE provided to Plaintiffs severely limited Plaintiffs' ability to perform their duties safely and efficiently and exposed Plaintiffs to heightened risks of contracting COVID-19 in their work environments, adversely affecting Plaintiffs' job performance and mental health.

62.     On information and belief, other, non-ethnically Chinese phlebotomists employed by Defendant during this time were provided with better and adequate PPE.

**Hostile Work Environment at Grand Central Station During the COVID-19 Pandemic**

63.     Beginning on May 5, 2020, Plaintiffs Yu Jun Peng, Yuan Sang and Yun Zheng were asked to report to Grand Central Station to participate in a mass effort to test NYC Transit Authority employees for COVID antibodies.

64.     Plaintiffs Peng, Sang, and Zheng, along with one other employee, were the only ethnically Chinese phlebotomists working at the test site.

11

65.    When Plaintiffs arrived at Grand Central, they were not met with any instructions or orientation. Instead, after observing the other phlebotomists, Plaintiffs simply took up spots that appeared empty.

66.    As part of the testing process, phlebotomists were required to enter into Defendant's computer system information that was handwritten on requisition forms. The handwriting was often illegible.

67.    Plaintiff Zheng was attempting to decipher a requisition form when a supervisor named "Stephanie" came over and harshly told Ms. Zheng to stop trying to do data entry and just take blood.

68.    Shortly afterwards, Stephanie also ordered Plaintiff Yuan to stop doing data entry and just focus on taking blood.

69.    To both Ms. Zheng and Ms. Sang, Stephanie's clear implication was that they could not prepare basic paperwork.

70.    Plaintiffs were then told by Stephanie that they could not use "butterfly needles" normally used for drawing blood because they would be "wasted" on Plaintiffs.

71.    For the next few hours, Stephanie hovered around Plaintiffs.

72.    Later that day, the site director named "Mike" called Plaintiffs over to them and told them that their supervisor wanted to speak to them on the phone. On the phone was Cathy Pan. Pan asked Plaintiffs if they were having problems. Pan then told Plaintiffs that Stephanie had complained to the director that none of the Plaintiffs knew how to take blood or do data entry. Pan explained that Stephanie and the director wanted them to leave.

73.    Ms. Sang responded to Ms. Pan that they felt like Stephanie was being unfair to them. Pan then told Plaintiffs that maybe there had been an error and asked that the phone be

returned to Mike. Plaintiffs were then told that they would be given "one more chance" and directed to return to work. At the end of the shift, Plaintiffs were directed to return the next day.

74.     Plaintiffs Sang and Peng were directed to return the next morning at 6 a.m. Ms. Sang and Ms. Peng asked if they could be scheduled for a later shift because they lived in Flushing and, as public transportation was running on a limited schedule at that time, Ms. Sang and Ms. Peng would be required to pay for a car service using their own funds to arrive so early. Stephanie dismissed their concerns and told them that switching was not possible.

75.     Other phlebotomists assigned to work at Grand Central Station were receiving transportation stipends to help manage any out-of-pocket costs related to their commute.

76.     For the remainder of the approximately two weeks that they were stationed at Grand Central, Plaintiffs Sang, Peng and Zheng observed Stephanie scheduling other non-Chinese phlebotomists for their shifts. Non-Chinese phlebotomists were asked what shifts would accommodate their needs and would always be scheduled prior to Plaintiffs. As a result, Plaintiffs continued to be scheduled for the least desirable, earliest shifts.

77.     Stephanie also imposed restrictions on Plaintiffs Sang, Peng and Zheng regarding lunch breaks that were not imposed on non-Chinese phlebotomists. Plaintiffs' lunch breaks were scheduled by Stephanie and strictly monitored so that they could spend no more than thirty minutes on their break whereas non-Chinese phlebotomists were permitted to take their lunch breaks at any time and for any length of time.

78.     Plaintiffs were deeply upset by the humiliating and degrading treatment they faced while working at Grand Central Station. They called Dr. Hu to complain. Dr. Hu told them that he would take care of the situation. Shortly afterwards, Plaintiffs were told that they would be transferred to another location and should not return to Grand Central.

79.     Plaintiffs waited approximately one week to be reassigned, during which time they were not paid. Plaintiffs were eventually reassigned to work at a testing center in Astoria, Queens.

**Fair Labor Standards Act and New York Labor Law Violations**

80.     All of the Plaintiffs were paid on an hourly basis while employed by Defendant.

81.     Plaintiffs were scheduled to work 4 ten-hour shifts each week.

82.     The prohibited duties and additional tasks that Defendant forced Plaintiffs to perform resulted in a disproportionately heavy workload for Plaintiffs.

83.     As a result, until the COVID-19 pandemic began in March 2020, Defendant regularly required Plaintiffs to work prior to and beyond their scheduled shifts without paying them anything for this off-the-clock work.  Almost all Plaintiffs worked approximately 15-30 minutes before their shift and 15-30 minutes after their shift finished.

84.     However, Defendant did not pay Plaintiffs for this additional work time. Instead, upon information and belief, Plaintiffs' supervisors at times manipulated Plaintiffs' time clock entries to erase previously recorded overtime hours.

85.     Plaintiffs frequently worked more than forty hours in a work week while employed by Defendant, in part due to workplace policies in place that mandated that Plaintiffs assist anybody who entered the workplace prior to closing time.

86.     In addition, Defendant failed to provide legally mandated wage notices which clearly stated the hourly and overtime rate of pay upon hire. The paystubs that Defendant provided to Plaintiffs also did not correctly list the regular and overtime hours that Plaintiffs worked.

87.     Until approximately 2018, Plaintiffs stationed in the Chinatown, Flushing, and Sunset Park patient service centers were given additional paid time off, known as "cumulative time," instead of the overtime wages that they earned and were owed, in violation of the FLSA and NYLL.

88.     In addition, in order to access this "comp time," other paid time off, and even sick leave, Plaintiffs and other ethnically Chinese phlebotomists were required to provide two weeks' advance notice.

89.     Upon information and belief, each of the Plaintiffs was not paid the correct overtime premium pay as required by law at all times.

90.     In or around December 2019 or January 2020, the Chinese phlebotomists went to Dr. Hu to complain about the station being open to patients until 6:00 pm.  They requested that Dr. Hu change the closing time to 5:00 or 5:30 pm so that they could have some time to do the paperwork. Upon information and belief, no changes were made in response to their complaints and Plaintiffs continued to work more than 40 hours per week without the lawfully required overtime premium pay.

## COLLECTIVE ACTION ALLEGATIONS

91.     Upon information and belief, Defendant's failure to comply with the FLSA extended beyond the Plaintiffs to other similarly situated employees who worked more than forty hours in a work week without receiving the correct overtime premium pay.

92.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, and all other similarly situated current and former phlebotomists of Defendant pursuant to 29 U.S.C. § 216(b) who were employed between the period of January 3, 2019 to date.

15

93.     The consent to sue forms for Plaintiffs, aside from Plaintiff Peng, are attached hereto as **Exhibit 1**.

94.     At all relevant times, Plaintiffs and others who are and/or have been similarly situated were paid by Defendant in similar ways, and have been subject to Defendant's common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the statutorily required overtime compensation for hours worked in excess of forty (40) per workweek.

### CLASS ACTION ALLEGATIONS UNDER FED.R.CIV.P.23(b)(3) FOR VIOLATIONS OF THE NYLL

95.     Plaintiffs bring this action on behalf of themselves and all other phlebotomists who were or are employed by the Defendant but who did not receive compensation required by the NYLL while employed by Defendant.

96.     Upon information and belief, this class of persons consists of no fewer than 40 employees, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed.R.Civ.P.23(a)(1).

97.     There are questions of law and fact common to the class, which predominate over any questions affecting only individual members, specifically: whether the employment of Plaintiffs by the Defendant is subject to the jurisdiction and the wage and overtime requirements of the NYLL.

98.     The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendant.

99.     Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

100.    A class action is superior to the other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P.23(b)(3).

101.    Plaintiffs bring the sixth and seventh claims for relief herein on behalf of themselves and as representatives of all other persons similarly situated as a class action pursuant to Fed.R.Civ.P.23, in respect to all claims that Plaintiffs and all persons similarly situated have against the Defendant as a result of the Defendant's violations under the NYLL.

## FIRST CAUSE OF ACTION
### For Discrimination in the Terms and Conditions of Employment in Violation of Section 1981

102.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

103.    Defendant BioReference subjected Plaintiffs to discrimination on the basis of their ethnicity and national origin, by requiring them to engage in work that was prohibited by company policy and beyond the scope of their duties, paying them less and lower wage rates and denying them adequate PPE.

104.    Defendant also subjected Plaintiffs Peng, Sang, and Zheng to a hostile work environment when assigned to Grand Central Station.

105.    These acts were in violation of Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981.

106.    As a result of Defendant's actions, Plaintiffs have suffered lost wages and emotional distress.

107.    Due to Defendant's violations, Plaintiffs are entitled to recover from Defendant compensatory and punitive damages, as well as reasonable attorneys' fees and costs of the action.

**SECOND CAUSE OF ACTION**
**For Discrimination in the Terms and Conditions of Employment in Violation of Title VII**
**on Behalf of All Plaintiffs Except Plaintiff Wang**

108.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

109.    Defendant BioReference subjected Plaintiffs to discrimination on the basis of their ethnicity and national origin, by requiring them to engage in work that was prohibited by company policy and beyond the scope of their duties, paying them less and lower wage rates and denying them adequate PPE.

110.     Defendant also subjected Plaintiffs Peng, Sang, and Zheng to a hostile work environment when assigned to Grand Central Station. These acts were in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1).

111.    As a result of Defendant's actions, Plaintiffs have suffered lost wages and emotional distress.

112.    Due to Defendant's violations, Plaintiffs are entitled to recover from Defendant compensatory and punitive damages, as well as reasonable attorneys' fees and costs of the action.

**THIRD CAUSE OF ACTION**
**For Discrimination in the Terms and Conditions of Employment in Violation of NYSHRL**

113.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

114.    Based upon the facts alleged above, Defendant BioReference subjected Plaintiffs to discrimination on the basis of their ethnicity and national origin, by requiring them to engage in work that was prohibited by company policy and beyond the scope of their duties, paying them less and lower wage rates and denying them adequate PPE.

115.    Defendant also subjected Plaintiffs Peng, Sang, and Zheng to a hostile work environment when assigned to Grand Central Station. These acts were in violation of New York State Human Rights Law, N.Y. Exec. Law § 296(1)(a).

116.    As a result of Defendant's actions, Plaintiffs have suffered lost wages and emotional distress.

117.    Due to Defendant's violations, Plaintiffs are entitled to recover from Defendant compensatory and punitive damages, as well as reasonable attorneys' fees and costs of the action.

**FOURTH CAUSE OF ACTION**
**For Discrimination in the Terms and Conditions of Employment in Violation of Section NYCHRL**

118.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

119.    Based upon the facts alleged above, Defendant BioReference subjected Plaintiffs to discrimination on the basis of their ethnicity and national origin, by requiring them to engage in work that was prohibited by company policy and beyond the scope of their duties, paying them less and lower wage rates and denying them adequate PPE.

120.    Defendant also subjected Plaintiffs Peng, Sang, and Zheng to a hostile work environment when assigned to Grand Central Station. These acts were in violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a)(3).

121.    As a result of Defendant's actions, Plaintiffs have suffered lost wages and emotional distress.

122.    Due to Defendant's violations, Plaintiffs are entitled to recover from Defendant compensatory and punitive damages, as well as reasonable attorneys' fees and costs of the action.

## FIFTH CAUSE OF ACTION
**For Prohibited Differential in Pay Rate Because of Protected Class in Violation of NYLL § 194**

123.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

124.    Plaintiffs are employees within the meaning of the NYLL §§ 2 and 190.

125.    Plaintiffs are all ethnically Chinese and are all members of a protected class.

126.    NYLL prohibits employers from paying employees with status within a protected class a wage at a rate less than the rate at which an employee without status in the same protected class is paid for equal or substantially similar work which requires equal skill, effort and responsibility, and which is performed under similar working conditions. NYLL § 194.

127.    Defendant BioReference willfully paid Plaintiffs at lower hourly rates of pay than non-ethnically Chinese phlebotomists, even though Plaintiffs performed additional job duties not required of non-ethnically Chinese phlebotomists and had more years of experience and seniority in violation of NYLL § 194.

128.    Due to Defendant's violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' compensatory damages, triple liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

## SIXTH CAUSE OF ACTION
**For Violations of the Fair Labor Standards Act**

129.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

130.    Plaintiffs were employees of Defendant BioReference within the meaning of the FLSA. 29 U.S.C. § 203.

131.    Defendant failed to pay Plaintiffs' overtime wages at an hourly rate of 150% of their regular hourly rate for each hour worked in excess of 40 per week, in violation of 29 U.S.C. § 207.

132.    Defendant's failure to pay Plaintiffs lawful overtime wages was willful.

133.    Due to Defendant's FLSA violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

### SEVENTH CAUSE OF ACTION
**For Violations of the New York Labor Law**

134.    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

135.    Plaintiffs were employees of Defendant BioReference within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

136.    Defendant failed to pay Plaintiffs' overtime wages at an hourly rate of 150% of their regular hourly rate for each hour worked in excess of 40 per week, in violation of NYLL § 652 and 12 N.Y.C.R.R. § 142-2-2.

137.    Defendant's failure to pay Plaintiffs lawful overtime wages was willful.

138.    Due to Defendant's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

## EIGHTH CLAIM FOR RELIEF
### For Failure to Notify Under the New York Labor Law

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    Pursuant to §195(1) of the NYLL, within ten business days of Plaintiffs and other similarly situated employees' hiring or a change to their pay rate, Defendant was obligated to provide them with a notice describing, *inter alia*, their hourly regular and overtime rates of pay.

141.    Pursuant to §195(3) of the NYLL, Defendant was obligated to provide Plaintiffs and other similarly situated employees with a wage statement, along with their pay, that specified their rate of pay, their hours worked, and the pay period.

142.    Defendant failed to provide Plaintiffs and other similarly situated employees with a notice or paystub as required under §195 of the NYLL.

143.    As a direct and proximate result of Defendant's willful and unlawful conduct, as set forth herein, Plaintiffs and other similarly situated employees have sustained damages and seek damages in accordance with §198 of the NYLL for each week Defendant failed to provide such notice and paystubs, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that a judgment be granted as follows:

(a)    Declaring Defendant's conduct complained of herein to be in violation of Plaintiffs' rights under Title VII, NYSHRL, NYCHRL, Section 1981, FLSA and NYLL;

(b)    Awarding Plaintiffs compensatory/emotional distress damages, and punitive damages under Title VII;

22

(c)  Awarding Plaintiffs compensatory/emotional distress damages, and punitive

damages under the NYSHRL;

(d)  Awarding Plaintiffs compensatory/emotional distress damages, and punitive

damages under the NYCHRL;

(e)  Awarding Plaintiffs unpaid overtime wages and liquidated damages under the

FLSA;

(f)  Awarding Plaintiffs unpaid overtime wages and liquidated damages under the

NYLL;

(g)  Awarding Plaintiffs penalties under the NYLL;

(h)  Certifying a collective action pursuant to the FLSA;

(i)  Certifying a class action pursuant to the NYLL;

(j)  Awarding Plaintiffs pre-judgment and post-judgment interest;

(k)  Awarding Plaintiffs the cost of this action, together with reasonable attorneys'

fees; and

(l)  Awarding such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury in this action of all issues so triable.


Dated: January 3, 2021
       New York, New York

                              Respectfully submitted,


                              *Michael Taubenfeld*
                              _____
                              FISHER TAUBENFELD LLP
                              Michael Taubenfeld (michael@fishertaubenfeld.com)
                              225 Broadway, Suite 1700

New York, New York 10007
Phone: (212) 571-0700
Facsimile: (212) 505-2001

THE LEGAL AID SOCIETY
Young W. Lee (ywlee@legal-aid.org)
Lizabeth Schalet (lschalet@legal-aid.org)
199 Water Street, 3rd Floor
New York, New York 10038
Tel: (212) 577-3300

*ATTORNEYS FOR PLAINTIFFS*

**EXHIBIT 1**

## CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an individual who is or was employed by BIOREFERENCE LABORATORIES, INC. and/or
related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am
bound by the terms of the Professional Services Agreement signed by me in this case.

Huimin Liang

_____

NAME

_____

SIGNATURE

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who is or was employed by BIOREFERENCE LABORATORIES, INC. and/or

related entities.  I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am

bound by the terms of the Professional Services Agreement signed by me in this case.


Yuan Sang

_____

NAME

DocuSigned by:

_____

6AB5362DBFF34E5...

SIGNATURE

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who is or was employed by BIOREFERENCE LABORATORIES, INC. and/or

related entities.  I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am

bound by the terms of the Professional Services Agreement signed by me in this case.

Jai Lei Wang

_____
NAME

DocuSigned by:

_____
4404CFB4ACA042F...

SIGNATURE

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who is or was employed by BIOREFERENCE LABORATORIES, INC. and/or

related entities.  I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am

bound by the terms of the Professional Services Agreement signed by me in this case.


Ling Xu
_____

NAME

DocuSigned by:

F918B90EBF6B4BC...
_____

SIGNATURE

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who is or was employed by BIOREFERENCE LABORATORIES, INC. and/or

related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am

bound by the terms of the Professional Services Agreement signed by me in this case.


YUN ZHENG
_____

NAME

DocuSigned by:

*YUN ZHENG*

C642D176A36049C...
_____

SIGNATURE

## CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an individual who is or was employed by BIOREFERENCE LABORATORIES, INC. and/or related entities.  I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by me in this case.

Wendy Zong

_____

NAME

_____

SIGNATURE